BRANDY M. SELLINGER,          )
                                    )
          Plaintiff,        )
                                    )
          v.              )   CASE NO. 1:10-cv-01141-DML-RLY
                                    )
MICHAEL J. ASTRUE,           )
                                    )
          Defendant.     )

# Entry on Judicial Review

Plaintiff Brandy M. Sellinger applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act on May 29, 2008. She alleges that she has been disabled since December 2, 2006, because of problems related to a stroke, back pain, diabetes, obesity, poor eyesight, severe headaches, and feelings of dizziness. (*See* R. 80). Acting for the Commissioner of the Social Security Administration, an administrative law judge ("ALJ"), after a hearing held October 7, 2009, found that Ms. Sellinger is not disabled because, although she can no longer perform her past relevant work, she is capable of performing a modified level of sedentary, unskilled work consistent with the demands of jobs as a hand packer or production worker/assembler, and those jobs exist in significant number in Indiana.

The national Appeals Council denied review of the ALJ's decision on July 20, 2010; later it accepted additional evidence from Ms. Sellinger, but on September 17, 2010, again denied review (R. 1), rendering the ALJ's decision for the Commissioner final. Ms. Sellinger filed this

civil action for judicial review under 42 U.S.C. § 405(g), which governs judicial review of DIB claims.[1]

Ms. Sellinger asks the court to reverse the ALJ's decision and award benefits, or to remand for further proceedings, on the grounds that the ALJ's determinations at steps three and five of the familiar sequential analysis are not supported by substantial evidence. She argues that the medical evidence proved that her impairments met or equaled five different listings, that the ALJ erred by deciding whether Ms. Sellinger met or equaled a listing without the advice at the hearing of a medical advisor, and that he unfairly ignored treatment records demonstrating disabling mental health impairments. Ms. Sellinger also challenges the ALJ's residual functional capacity assessment, along with the ALJ's negative credibility determination.

For the reasons discussed in this entry, the Commissioner's decision is AFFIRMED.

### Standard for Proving Disability

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Ms. Sellinger is disabled if her impairments are of such severity that she cannot perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory

---

[1]     The parties consented to the magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The third step is an analysis about whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits.  *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

 If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five.  RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled.  The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled. The individual claiming disability bears the burden of proof at steps one through four.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the Commissioner

has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 416.960(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands that there be more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004) (internal citations omitted). *See also Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000) (court reviews record as a whole, but does not substitute its judgment for the ALJ's judgment by reweighing evidence, or resolving conflicts, or reconsidering the facts or witness credibility). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir. 1997). A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson*

*v. Apfel,* 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions. *Sarchet v. Chater,* 78 F.3d 305, 309 (7th Cir. 1996).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). If an ALJ concludes that benefits should be denied, he must have first built an accurate, logical bridge between the evidence and his conclusion. *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). The ALJ need not address every piece of evidence in his decision, but he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## The ALJ's Findings

Ms. Sellinger was born in July 1976, was 30 years old at the time of the alleged onset of disability on December 2, 2006, and was 33 years old at the time of the ALJ's decision. She has a high school education and has worked as a restaurant hostess, daycare worker, housekeeper, deli worker, and cashier, each of which required exertion at either the light or medium levels. (R. 27).

At step one, the ALJ determined that Ms. Sellinger had worked for very short periods of time in 2007 and 2008, after her alleged onset of disability in 2006, but that both jobs she held during this time were unsuccessful work attempts and not substantial gainful activity. (R. 18). At step two, the ALJ identified Ms. Sellinger's obesity, type II diabetes mellitus, moderate obstructive pulmonary disease, and mood disorder as severe impairments that more than minimally affect her ability to perform basic work activities. He determined that Ms. Sellinger's high cholesterol, migraine headaches, restless leg syndrome, and back pain were not severe impairments. (R. 18-19). The ALJ also closely examined the medical evidence regarding the

stroke that Ms. Sellinger alleged she had suffered and found that although Ms. Sellinger consistently informed numerous providers that she had had a stroke, the "stroke" event was not—according to the contemporaneous medical record—a stroke or a cerebrovascular attack of any kind. (R. 19-20).

At step three, the ALJ evaluated Ms. Sellinger's impairments against listings 3.02 (chronic pulmonary insufficiency), 9.08 (diabetes mellitus), 11.04 (central nervous system vascular accident), 12.02 (organic mental disorders), 12.03 (schizophrenic, paranoid, and other psychotic disorders), and 12.04 (affective disorders), and found that Ms. Sellinger's impairments did not meet or medically equal any of the listings. The ALJ discussed Ms. Sellinger's request that he conduct a supplemental hearing and summon a psychologist and another medical expert to testify whether a listing was met, but he determined that the entirety of the medical record was sufficient for him to make a decision at step three without additional medical testimony. (R. 20-22).

At step four, the ALJ determined that Ms. Sellinger was capable of performing a modified range of sedentary work, deciding that Ms. Sellinger could only occasionally climb, balance, stoop, kneel, crouch, and crawl, and that her mental impairments must be accommodated by limiting work to that requiring the carrying out of simple, one-on-one instructions. With this RFC, Ms. Sellinger could not perform her past relevant work (R. 27) but, crediting the testimony of the vocational expert, the ALJ found that there were significant numbers of unskilled and sedentary jobs in Indiana as a hand packer or production worker/assembler that were consistent with Ms. Sellinger's abilities. (R. 27-28). Accordingly, the ALJ decided that Ms. Sellinger is not disabled.

**Analysis**

**A.      Ms. Sellinger has not met her burden that her impairments met any listing.**

Ms. Sellinger argues that the ALJ's step three findings that her medical impairments did not meet or medically equal listing 9.08, 11.04, 12.02, 12.03, or 12.04 all lack appropriate evidentiary support.  Ms. Sellinger's opening brief contains nine pages summarizing various treatment records—with respect to her diabetes, obesity, alleged "stroke," and mental health observations and treatment—that  she alleges the ALJ either "ignored, misstated, argued with, or rejected."  But she does not even set forth the requirements of any of the listings and does not explain how these records require a conclusion that Ms. Sellinger met or medically equaled any of them, which is her burden.  *Maggard v. Apfel,* 167 F.3d 376, 380 (7th Cir. 1999) (claimant has burden to prove that she meets or medically equals each requirement of a listing).   Ms. Sellinger's reply brief attempts to correlate some specific records with some of the requirements of the listings, but she still does not explain how the records require the conclusion that listings were met or equaled.  Further, waiting until the reply brief to make arguments that could have been made in one's opening brief is too late and does not give the Commissioner an opportunity for response.  *See Waite v. Bowen,* 819 F.2d 1356, 1360 n.1 (7th Cir. 1987) (refusing to consider new argument in reply brief in appeal of adverse disability determination).  Finally, there are obvious shortcomings between the medical evidence and the listings.  The court is satisfied that the ALJ's conclusion that none of the listings was met or medically equaled is supported by substantial evidence.

**1.      Ms. Sellinger did not prove that she satisfied all criteria for listing 9.08A.**

Regarding Ms. Sellinger's diabetes evaluated under 9.08A, her reply brief cites to two medical records (R. 316 and R. 401) as the support that she met or medically equaled the listing.

Those records document that Ms. Sellinger has been diagnosed with type II diabetes and reported to her providers that she has felt numbness in her thigh (R. 316) and in her hands and feet (R. 401) over a long period of time. A diagnosis of diabetes and feelings of numbness are not enough to satisfy the listing. The listing requires medical documentation of physical signs and symptoms of diabetes with neuropathy "demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.08A. The two records cited by Ms. Sellinger say nothing about, or even suggest, "significant and persistent disorganization of motor functions" or "sustained disturbance of gross and dexterous movements," or "sustained disturbance of gait or station." The ALJ found no evidence in Ms. Sellinger's medical records demonstrating the severity of neuropathy described in the listing (*see* R. 20), and Ms. Sellinger has not shown otherwise.

2.    **The ALJ's findings that Ms. Sellinger did not suffer a vascular accident and did not meet listing 11.04 are supported by substantial evidence.**

Regarding Ms. Sellinger's "stroke," her opening and reply briefs point to a number of medical records in which Ms. Sellinger recited her medical history as including a stroke in July 2008, but she does not demonstrate that the ALJ's evaluation of the medical evidence of the "stroke" event is unreasonable. As the ALJ explained, in July 2008, Ms. Sellinger went to the emergency room complaining that she was weak and her speech was slurred. Tests and physical examination were performed; Ms. Sellinger's neurological test results were normal ("No focal motor deficits, focal sensory deficits, cerebellar deficits," R. 262), as were x-rays, a head CT ("no bleed, no mass, no acute ischemic stroke, no acute changes," R. 263), and an EKG ("normal," R. 273). As the ALJ also noted, even though Ms. Sellinger complained that her speech was slurred, the medical assessment was that her speech was not slurred but was clear

and understandable. (R. 264).[2] There was no medical evidence of a stroke and the ALJ's finding that the medical records did not support the existence of any "cerebrovascular attack of any kind" is supported by the evidence, and supports his conclusion that listing 11.04 was not met. *See White v. Barnhart,* 415 F.3d 654, 658 (7th Cir. 2005) (where ALJ's finding that there was no documentation of certain medical disorder was supported by substantial evidence, there was no reason for ALJ to consult listing requirements for that medical disorder)

### 3. Ms. Sellinger has not demonstrated that she met any of the mental impairments listings.

The ALJ's evaluation of Ms. Sellinger's mental impairments against listings 12.02, 12.03, and 12.04 is also supported by substantial evidence. Each of these listings requires, among other things, that the claimant's mental condition manifest itself at a level of severity measured by the same factors, called the "B" criteria. (A claimant whose mental impairment does not manifest itself at a severity level tested by the B criteria may then look to the "C" criteria for a particular listing. The C criteria for listings 12.02, 12.03, and 12.04 are not identical, but Ms. Sellinger does not claim that she met the C criteria for any of them or challenge the ALJ's decision that she did not meet them.) To satisfy the B criteria, a claimant's mental disorder must result in at least two of the following:

Marked[3] restriction of activities of daily living;

---

[2]    Ms. Sellinger's complaint that the ALJ did not cite any evidence for his observation that no evidence of "slurred speech, paresthesias, facial droop or drooling was found" (Dkt. 28 at p. 6) is contradicted by the ALJ's decision. He cited page 10 of Exhibit 2F (at page 264 of the electronic administrative record), which contains the evidence cited by the ALJ.

[3]    "Marked" means "more than moderate but less than extreme." Listing 12.00C (Assessment of level of severity). The regulation explains further that a "marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

Marked difficulties in maintaining social functioning; or

Marked difficulties in maintaining concentration, persistence, or pace; or

Repeated episodes of decompensation, each of extended duration.

*See* listings 12.02B, 12.03B, and 12.04B.

The ALJ evaluated each B factor and explained the evidence he considered and relied upon in reaching his conclusions that Ms. Sellinger had, at most, moderate difficulties in her activities of daily living (noting that she did not attend as much to activities that she previously enjoyed), social functioning (her husband testified that she avoided crowds), and maintaining concentration, persistence, or pace (the consultative psychological examination revealed that she could sustain adequate concentration and persistence if the tasks were of only mild complexity), and that there was no evidence that she had suffered from episodes of decompensation, each of extended duration. (R. 21).

Ms. Sellinger makes three specific challenges to the ALJ's evaluation of her mental health treatment for purposes of the listings. She argues that her behavior at the Samaritan Center in November 2009, which led to her hospitalization for mental health treatment, should have been considered, that the ALJ "ignored" her mental health treatment at the Samaritan Center in September 2009, which reported a GAF of 45, and that the ALJ improperly failed to summon a medical advisor to the hearing to opine on whether Ms. Sellinger met or equaled a listing.

### a. The ALJ's decision cannot be reversed based on the November 2009 records.

Regarding the November 2009 Samaritan Center records (R. 435-438), they were first submitted by Ms. Sellinger to the Appeals Council and were not before the ALJ. The ALJ's decision may not be reversed based on information he did not have. *Eads v. Secretary of Dep't*

*of Health and Human Servs.,* 983 F.2d 815, 817-18 (7th Cir. 1993) (court may not reverse ALJ's decision based on evidence first submitted to the Appeals Council). Documents that are first submitted to the Appeals Council may not be considered by a court on judicial review unless the court is reviewing an opinion of the Appeals Council to grant or deny benefits. *Id.* at 817. The case cited by Ms. Sellinger in favor of the court's considering the November 2009 psychiatric records fit that procedural requirement: In *Bauzo v. Bowen,* 802 F.2d 917 (7th Cir. 1986), the Appeals Council reversed the ALJ's decision and reached the merits of the claimant's disability application, ruling that the claimant was not disabled. *Id.* at 920. There, the Appeals Council's decision was the final decision of the Commissioner subject to judicial review. *Id.* at 921.

In Ms. Sellinger's case, the Appeals Council denied *review* of the ALJ's decision,[4] which had the effect of making the ALJ's decision the final decision of the Commissioner, and the only evidence that can be considered on judicial review is the evidence that was before the ALJ as part of his decision-making. These principles were explained by the Seventh Circuit in *Eads*:

> Since the submission of the evidence [to the Appeals Council] precedes the Appeals Council's decision, and that decision, even when it denies review, is a precondition to judicial review, the new evidence is a part of the administrative record that goes to the district court in the judicial review proceeding, and then to this court if there is an appeal. It might seem therefore that the district judge and we would be free to consider the new evidence that was before the Appeals Council in deciding whether the decision denying benefits was supported by the record as a whole. And of course this is right when the Council has accepted the case for review and made a decision on the merits, based on all the evidence before it, which then becomes the decision reviewed in the courts. It is wrong when the Council has refused to review the case. For then the decision reviewed in the courts is the decision of the administrative law judge. The correctness of that decision depends on the evidence that was before him.

---

[4] The decision of the Appeals Council to deny review is itself not reviewable by a court. See *Damato v. Sullivan,* 945 F.2d 982, 988-89 (7th Cir. 1991) (decision by Appeals Council to deny review is not subject to judicial review).

983 F.2d at 817 (internal citations omitted); *see also Wolfe v. Shalala,* 997 F.2d 321, 322 n.3 (7th Cir. 1993) (When the ALJ's decision stands as the final decision of the Commissioner because the Appeals Council denied review of the ALJ's decision, "it is that decision and the evidence which was before the ALJ which is before [the court] on review." Additional records submitted to Appeals Council cannot be used as basis for finding reversible error).

In certain circumstances, an ALJ's decision can be remanded under sentence six of 42 U.S.C. § 405(g) because of new evidence that was not before the ALJ, but then the claimant bears the burden to prove that there is new, material evidence and good cause for failing to incorporate the evidence in a prior proceeding. *Waite v. Bowen,* 819 F.2d 1356, 136-621 (7th Cir. 1987) (proponent of remand under sentence six of 42 U.S.C. § 405(g) bears burden to show that new, material evidence exists and there is good cause why it previously was not submitted). Ms. Sellinger has not requested a remand under sentence six, but has asked the court to consider the November 2009 records as a basis for finding that the ALJ's decision was not supported by substantial evidence or the Appeals Council's decision to deny review was erroneous. The court can do neither.

**b.  The ALJ explained his evaluation of the one-time GAF score of 45.**

Ms. Sellinger contends that the ALJ "ignored" a September 9, 2009 mental health treatment plan even though it reported that Ms. Sellinger's mental health problems were interfering with her functioning and reported her GAF as 45. She further contends that because a "treating" psychiatrist (Dr. Helfenbein) diagnosed her with the GAF of 45, that assessment was entitled to controlling weight, and proved she is disabled. Ms. Sellinger is incorrect on each count.

GAF stands for Global Assessment of Functioning, and is a numeric scale from 9 through 100 used by mental health physicians and clinicians to rate an adult's overall level of social, occupational, and psychological functioning, generally as of the time of the psychological examination. Under the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), a GAF between 41 and 50 denotes "Severe symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." *See* "Axis V Global Assessment of Functioning Scale," www.psyweb.com/DSM_IV/jsp/Asix_V.jsp (last visited August 31, 2011).

The ALJ did not ignore Ms. Sellinger's 2009 mental health treatment and although he did not specifically mention her September 9, 2009 record, he evaluated Dr. Helfenbein's August 2009 clinical opinion, including the doctor's assignment to Ms. Sellinger of a GAF of 45, which was the impetus for the September 9, 2009 treatment plan. There was no need for the ALJ to address specifically every mental health record. The ALJ thoroughly discussed Ms. Sellinger's mental health treatment and other evidence relevant to her mental functioning. He did not ignore an entire line of evidence. *See Jones v. Astrue,* 623 F.3d 1155, 1162 (7th cir. 2010) (ALJ is not required to discuss every piece of evidence but is "prohibited only from ignoring an entire line of evidence that supports a finding of disability").

Ms. Sellinger's repeated references to Dr. Helfenbein as her treating psychiatrist and argument that the ALJ was required to give Dr. Helfenbein's clinical opinion controlling weight are without support. Dr. Helfenbein saw Ms. Sellinger once, on August 24, 2009. A medical source that does not have an ongoing relationship with the claimant because, for example, she has treated the claimant only once, is not a treating source whose opinion is entitled to

controlling weight.  *See White v. Barnhart,* 415 F.3d 654, 658 (7th Cir. 2005).   A physician or

clinician whose treating relationship with the claimant is that sparse is, by definition under the

SSA's regulations, a non-treating source.  *Id.*; 20 C.F.R. § 404.1502 ("Nontreating source means

a physician . . . who has examined you but does not have, or did not have, an ongoing treatment

relationship with you").

The ALJ addressed Dr. Helfenbein's clinical judgment, including the doctor's assessment

of Ms. Sellinger's GAF at 45, and the reasons the ALJ rejected the judgment as inconsistent with

the longitudinal picture of Ms. Sellinger's overall mental health evaluations and treatment, her

activities of daily living, and work history.  For example, the ALJ discussed that Ms. Sellinger's

level of daily activities are varied and extensive.  She drives with her husband (who retired at an

early age) around the forest some days, works on their house on other days, gets on the

computer, watches television if it is interesting, planned her wedding, was trying to become

pregnant, had taken care of her grandfather, and cooked for her mother and aunt.  She also

reported on her disability function report that she washes clothes and dishes, picks up around the

house, cooks, vacuums, and shops.  (*See* R. 23).  He also addressed other psychiatric evaluations

in the record, including Dr. Fink's consultative examination in October 2008.  Dr. Fink (who

shares the same status as Dr. Helfenbein as a non-treating source, 20 C.F.R. § 404.1502) reported

no evidence of psychotic symptoms, unusual thought processes, bizarre ideation, or clinically

significant affective disorders.  The ALJ discussed that he assessed Dr. Fink's one-time

examination and clinical judgment as more consistent with the overall historical and longitudinal

record than Dr. Helfenbein's one-time examination.  (R. 25).   He noted that Ms. Sellinger's

reports to Dr. Helfenbein in August 2009 were inconsistent with statements she had made only a

few months earlier to a different doctor, regarding whether she experiences auditory or visual

hallucinations.   (R. 24). The ALJ also noted the disability screener's report of his telephone call with Ms. Sellinger in June 2008, in which Ms. Sellinger was described as "cooperative and pleasant [and had] no problems communicating."  (R. 23).

The ALJ's opinion reflects his weighing of the evidence and his determination of the weight to give to medical opinions within the record, consistent with his responsibility under the SSA's regulations.  *See* 20 C.F.R. § 404.1527(d) (ALJ has responsibility to evaluate and decide weight to give medical opinions).  Ms. Sellinger has not demonstrated that the ALJ's evaluation of Ms. Sellinger's mental health for purposes of determining whether she met or medically equaled either listing 12.02, 12.03, or 12.04 is unsupported by substantial evidence.

### c.   **The ALJ was not required to summon a medical advisor.**

Ms. Sellinger's argument that the ALJ was required to summon a medical advisor to the hearing to opine whether Ms. Sellinger met or medically equaled a listing, or otherwise to discuss whether Ms. Sellinger was disabled, is without merit.  She cites two cases in support of her argument, but neither *Barnett* nor *Green* (discussed below) establishes a rule that an ALJ must always summon a medical advisor regarding medical equivalence to a listing or any other disability-related determination.  In *Barnett v. Barnhart,* 381 F.3d 664 (7th Cir. 2004), the ALJ's opinion whether the claimant was disabled at step three contained two sentences regarding the listing of impairments and did not identify any particular listing as one that he considered.  The court found that the ALJ had made only a perfunctory analysis of the listing and had refused to consider a whole line of medical records documenting her symptoms and treatment for seizures over a 10 year period.  Further, there was nothing in the administrative record that any physician had ever considered whether the claimant's impairments met or equaled a listing, the ALJ did not consult a medical expert to make that judgment, and it therefore appeared that "the ALJ merely

assumed the absence of [medical] equivalency without any relevant discussion." *Id.* at 670-71. Under those circumstances, the ALJ's decision at step three was not supported by substantial evidence. *Id.* at 671.

The ALJ's opinion in Ms. Sellinger's case and the administrative record bear no resemblance to the facts in *Barnett*. This ALJ identified the listings he considered and he discussed in detail his analysis of the medical records and the reasons he found that Ms. Sellinger did not meet or equal any listings. Further, the administrative record reflects that agency physicians had opined that Ms. Sellinger's physical and mental impairments did not satisfy, or medically equal, any listings. *See, e.g., Thomas v. Astrue,* 2010 WL 2485556 (S.D. Ind. June 11, 2010) (ALJ does not err in failing to summon medical expert on equivalence where there is no showing that the ALJ disregarded pertinent medical evidence contrary to his conclusions or failed to adequately explain how he reached the decisions he did).

In *Green v. Apfel,* 204 F.3d 780 (7th Cir. 2000), the court also did not rule that a medical advisor is always necessary. In fact, the court said that an ALJ is required to summon a medical expert only "if that is necessary" to make an informed decision regarding whether the claimant is disabled, at step three or otherwise. *Id.* at 781.

The ALJ addressed Ms. Sellinger's argument that he should summon a medical advisor and explained his decision that it was unnecessary to do so because the administrative record, including medical records, contained sufficient evidence to allow the ALJ to make the decisions required under the SSA regulations in determining disability. Other than her contention regarding the November 2009 Samaritan Center records (addressed above at p. 14) and her contention that a medical advisor must always be summoned, Ms. Sellinger does not attempt to show that the medical evidence available to the ALJ was incomplete in any respect. The court

finds no basis for concluding that the ALJ was required to solicit more medical information or another medical opinion to support his decision at step three, or any other step in his analysis. *See Apfel,* 204 F.3d at 781 (ALJ required to summon medical expert *if* "that is necessary to provide an informed basis for determining whether the claimant is disabled"); *Kendrick v. Shalala,* 998 F.2d 455 (7th Cir. 1993) (ALJ was not required to order another round of consultative exams when there were sufficient facts to make an informed decision).

**B.  The ALJ's RFC analysis is supported by substantial evidence**.

Ms. Sellinger's challenge to the ALJ's decision regarding the functional limitations imposed by Ms. Sellinger's physical and mental impairments is, at bottom, a request that the court reweigh the evidence and evaluate her credibility anew—tasks that are inappropriate for the court to undertake on judicial review of the Commissioner's decision.

**1.  The ALJ's credibility determination is not "patently wrong."**

In analyzing functional limitations caused by Ms. Sellinger's physical and mental impairments, the ALJ considered whether and the extent to which Ms. Sellinger's descriptions of the limiting effects of her impairments and their symptoms, including pain, were worthy of credence.  His assessment of Ms. Sellinger's credibility decision is entitled to special deference from the court and is not grounds for reversal and remand unless it was "patently wrong."  *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008) (because ALJ is in best position to evaluate a claimant's credibility, ALJ's credibility determination is reviewed deferentially and will not be set aside unless it is "patently wrong").  Social Security Ruling 96-7p describes the appropriate process for evaluating credibility and requires an ALJ to consider a claimant's subjective complaints in light of the relevant objective medical evidence, as well as any other pertinent evidence regarding the claimant's daily activities, the severity and intensity of the claimant's

pain or other symptoms, precipitating and aggravating factors, medication, treatment, and other measures to relieve the pain or other symptoms and their efficacy and side-effects, and any other factors relevant to functional limitations due to pain or other symptoms. *See* SSR 96-7p; 20 C.F.R. § 404.1529(c)(3). It is not necessary that the ALJ recite findings on every factor, but the ALJ must given reasons for the weight given to the claimant's statements so that the claimant and subsequent reviewers have a fair sense of how the claimant's testimony was assessed. *Brindisi v. Barnhart,* 315 F.3d 783, 787-88 (7th Cir. 2003) (ALJ must comply with SSR 96-7p in making a credibility determination by articulating the reasons behind the determination).

Ms. Sellinger contends that the ALJ's credibility determination was patently wrong because he considered *solely* whether Ms. Sellinger's statements about the intensity, persistence, and limiting effects of her pain and other symptoms were consistent with the objective medical evidence, contrary to the requirement s of SSR 96-7p. But—as with other of Ms. Sellinger's arguments that misstate the record—the ALJ's opinion does not rely *solely* on the grounds that Ms. Sellinger's complaints are inconsistent with the objective medical signs and laboratory findings. In addition to contrasting Ms. Sellinger's (and her husband's) descriptions of the limiting effects of her impairments against the objective medical signs and evidence, the ALJ identified discrepancies between Ms. Sellinger's complaints and actual daily activities, identified discrepancies between Ms. Sellinger's descriptions of her symptoms at the hearing and reports she has made to physicians, and took into account the extent to which Ms. Sellinger's symptoms were responsive to medication that did not have side-effects limiting Ms. Sellinger's functioning.

The ALJ also explained that he found Ms. Sellinger's appearance and demeanor at the hearing to be "generally unpersuasive." (R. 24). Ms. Sellinger came to the hearing dressed in

her pajamas and carrying a stuffed monkey.  She explained that she was scared.  She also told the ALJ about her memory problems and concentration difficulties, and that numbness in her right hand prevents her from holding anything.  The ALJ found that Ms. Sellinger's appearance seemed grossly exaggerated as compared to the objective evidence of her mental health, and the things she said did not match her behavior.  He noted that she said she could not grasp anything with her right hand, yet she grasped her stuffed monkey without any problems.  (R. 26).  He described that Ms. Sellinger testified about severe memory problems, yet she rattled off a list of medications with ease, telling the ALJ (without any apparent difficulty with her speech or memory) that she takes:  "insulin, Metformin, Glucophage, Actos, Cymbalta, Abilify, Amitripytlene, Naproxen, Vicodin, Lisinopril, Vytorin, and two inhalers."  (R. 46).

Ms. Sellinger contends that it was improper for the ALJ to assess credibility based on appearance and performance at the hearing—calling it a forbidden "sit and squirm" observation—but one of the very reasons an ALJ's credibility finding is reviewed especially deferentially is because of the ALJ's opportunity to observe the witness.  *See Powers v. Apfel,* 207 F.3d 431, 436 (7th Cir. 2000) ("we have repeatedly endorsed the role of observation in determining credibility").  The Seventh Circuit stressed in *Powers* the appropriateness of an ALJ gauging a person's frankness and honesty based on whether her demeanor, behavior, attitude, and general bearing seem consistent with the complaints she makes.  *Id.*  The court noted that an ALJ should be wary of relying heavily on whether a claimant seems to "sit and squirm" in a way consistent with pain or other functional limitations she says she suffers because that sort of behavior can be too easily manipulated by the deceitful claimant and the "hardy" claimant may steel herself at a hearing, but observation rightly plays a role in a credibility determination.  *Id.*

There is no basis on which the court can find that the ALJ's assessment of Ms. Sellinger's credibility was patently wrong.

**2.   <u>Substantial evidence supports the ALJ's evaluation of Ms. Sellinger's RFC.</u>**

Ms. Sellinger's additional arguments regarding the ALJ's evaluation of her functional capacity despite her physical and mental impairments fare no better than her attack on the ALJ's evaluation of Ms. Sellinger's credibility.   She makes broad-brush arguments that the ALJ's opinion itself does not bear out.

She claims that the ALJ selected and discussed only evidence that favor his denial decision (Dkt. 19 at p. 19), but that's not true.  For example, the ALJ addressed Dr. Helfenbein's opinion and the reasons he rejected that opinion.  He discussed that Ms. Sellinger had been found disabled for purposes of Indiana's Medicaid program, and the reasons he was not persuaded by the Medicaid decision.  The ALJ explained that the Medicaid decision relied on and credited Ms. Sellinger's claim that she had had a stroke (when that claim was not supported by medical evidence) and other subjective complaints that the ALJ found were not credible and inconsistent with the overall objective medical evidence.  (R. 26).

Ms. Sellinger claims that the ALJ ignored a host of mental health records, but his decision contains a highly-detailed look at her mental health evaluations and treatment and the ways in which her mental health manifested itself in her activities of daily living, social functioning, and abilities to concentrate. Contrary to Ms. Sellinger's claim that the ALJ ignored her health treatment at the Davies Martin Medical Clinic, the ALJ addressed the Clinic physician's conclusion—based on her treatment at the Clinic—that she was not able to work at her previous jobs, had had a stroke, was morbidly obese, and was prescribed medication for depression.  Although the ALJ explained that Ms. Sellinger had not had a stroke, the ALJ's RFC

took into account Ms. Sellinger's physical limitations (including her morbid obesity) and mental health limitations (including her difficulties concentrating and getting along with others), and he agreed that Ms. Sellinger was not capable of performing her past relevant work. (R. 26).

Ms. Sellinger claims that the ALJ ignored her diabetes and obesity (Dkt. 19 at pp. 19-20), but he did not. He found, instead, that she is morbidly obese, weighed 339 pounds as of November 2008, and that her obesity is a severe impairment that "more than minimally" affects her ability to perform basic work functions. (R. 18-19).

Ms. Sellinger claims the ALJ "ignored the findings" that she had suffered a stroke, but the ALJ thoroughly explained why he found the medical evidence did not contain any finding that she had suffered a stroke, an explanation that is supported by substantial evidence.

In short, Ms. Sellinger has not made a persuasive showing that the ALJ ignored a whole line of evidence, made any critical factual errors or omissions, or an error of law in assessing her functional capacity. Other than calling herself "totally disabled" from working, she has not identified a single functional limitation that the ALJ should have considered, but did not consider, in evaluating the evidence. The ALJ's decision that Ms. Sellinger was capable of performing a modified level of sedentary and unskilled work that also took into account her concentration and other mental difficulties is supported by substantial evidence. His finding, based on the VE's opinion, that significant numbers of jobs are available accommodating her RFC, is supported by the record.

## Conclusion

The ALJ's decision that Ms. Sellinger is not disabled is supported by relevant evidence that a reasonable person might accept as adequate to support his conclusions. Accordingly, the Commissioner's decision is AFFIRMED.

So ORDERED.

Date: 09/06/2011

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
mulvany@onet.net